May it please the Court, my name is Steve Year, I represent the taxpayers, petitioners in this matter, Donald Meinhardt and Arvella Meinhardt. This case concerns the deductibility of non-capital farm expenses related to a farmhouse on a farm, which was held to make a profit both during the period of ownership and through a subsequent sale. The IRS has said that the deductions were improper because there was no cash income derived specifically from the farmhouse part of the farm. The petitioners purchased their farm, a 140 acre farm, in 1976 for $75,000. The farm consists of various parts, like most farms do. There's tillable land, there's pasture land, and there is a farmhouse, a 100 year old farmhouse, and various other outbuildings on the farm. Now the population in Wright County has declined over the years as gas prices have risen. There are fewer commuters to the Twin Cities that want to live in Wright County, which is approximately 60 miles away from the cities. Now, Mr. and Mrs. Meinhardt purchased this farm as an investment after Mr. Meinhardt received a large bonus at work. He's an architect. They considered other possible investments, including a residence bungalow. In retrospect, it was a smart investment because the farm is valued at over $350,000 today. The petitioners lived in Golden Valley at the time the farm was purchased. It was not purchased as a hobby farm or a second vacation home. You know, you throw those numbers out, it would break out the land from the house. Well, I don't know if they, there's nothing in the record in terms of what the house would be worth without the farm, or what the farm would be worth without the house, but I would think that when you're selling a farm, most purchase... I would think what the numbers you just threw out were 98% for the land. You know, I think, you know, obviously some people value a house more than other people if they're purchasing a farm. I mean, you know, some people don't live in the farmhouse and they purchase a farm, but I think a lot of people, when they purchase a farm, they want to live there. You've got this argument that you've got to treat it all as one farm, to which the commissioner responds you never did. So now you just conveniently lump stuff together. I want to know, where is the breakout, or where is the support for the notion that it was never broken out, other than to have been separately rented? I mean, that argument intrigues me, but I don't know what the case law would say. And it seems to me your facts are thin or none, so I'm trying to get at that. Well, you know, I would just reassert that it's a farm, and I think that people, when they purchase a farm, they expect it to come with a farmhouse. I drive by working farmland with abandoned houses. There's probably at least a half a dozen of them that I, in a two-hour drive, so this is... Well, I don't think you should... That no longer have viable housing elements. You know, and the farm business, I acknowledge, has changed over the years, and they successfully could find people to lease the farmland, but... Could your clients sell this house and attract the land around it for me to come live if I wanted to, like cold weather, and wanted to come up to Minnesota and spend some time in the winter? In other words, could it be subdivided and sold separate from the farmland or not? Or do you know? Well, I assume that it would be possible to do that, Your Honor. You know, I think the decision was made that it makes sense to keep it together as a farm and to not split it up into various components. But sure, at the right price, I'm sure they could sell the farmland and a plot of land, the farmhouse, and a little bit of land with the farmhouse. But they didn't. I mean, they wanted... That would be a separate valuation that would be made by an owner like this, isn't it? And what's bothering me about this case, that if these improvements were made to really rent the property instead of just making it habitable for your clients at some point in the future, you wouldn't have to go into it, as I understand it. Isn't that correct? That's correct, but there were... If I did that and I improved the house with the intent that my wife and I would live in it, I couldn't deduct that. But if I were holding it out for rent or making an honest attempt to rent it, that probably would be a deductible amount that the IRS wouldn't have hassled your client about. Isn't that where we're at here? Well, the record shows that they did make efforts, continuous efforts, to try to rent the farmhouse. But in 31 years, they found nobody that ever paid rent. They did some bargain for barter work or something on the house. But over this period of time, now it's came from an abandoned farmhouse to one that's livable, and your clients want to deduct the cost of making it livable for them at this point in time. Is that... Well, first of all, I think you want to incentivize persons not to let a farmhouse simply rot away. But more to the point to your question, Your Honor, there's no evidence in the record that they had an intention to move to the house. They moved to the house because of certain somewhat catastrophic events. As opposed to all the relatives that were there for 24 of the 31 years? I'm sorry? Well, you say they. I assume you're conveniently referencing only the taxpayers and not all the relatives that were there for all or part of 24 of the 30 years. I mean, there's other... The inference that this was, oh, sure, we'd rent it if we could, but it's really an option for some member of the family down the road as a living place, maybe to resume farming and quit renting the farmland. As Judge Beam says, if that's the sort of future possibilities that are being played out, it's not deductible, and it gets into the substantiation point. I don't see where there's any evidence of the advertising spent, how aggressively, why there was no revised rental strategy. It just, it seems to me, it's awfully hard in a fact-intensive case to overturn the tax court for inferring on these facts that this was. They held on to the farmhouse, not knowing quite what to do with it because the family might want it someday. This isn't a situation where there's an issue of converting the property from a residence to investment property. If you own a farmhouse and you're making efforts to rent it... I'm talking alternative residence. Sure, they bought the farm as an investment. They did real well with the land. The house, they can tear it down. When it can't rent, they can tear it down or they can fix it up as not an investment, as a residential possibility. They can go to the county board in most states and subdivide attractive land around the house and either rent it or sell it as a rental property, as you suggest that they were intending to do and not live in it themselves. But there's absolutely no evidence that I read in your briefing that that was pursued. Around Lincoln, Nebraska, a vacant house like that within 10 or 15 miles of the city, if you subdivided two or three acres around it, that's a valuable piece of property. People want to live in it. And there's no evidence that anything like that ever... And that, of course, isn't in the record, but I don't know where you're going with this deductibility since they've now moved into it after it's been fixed up. And after the tax year is in question. You know, I mean, this home, I think there's a large difference between 15 miles from a metropolitan area and 60 miles. It probably isn't as much. But even in the smaller cities, that's kind of a cottage industry. They left a flyer at the grocery store or something that it was for rent. And I read the record. Nobody ever approached them in response to that to rent the property. Is that right?  Rent the house, I mean. Well, there were communications that they had concerning renting the house. But no one actually paid rent money for the house, Your Honor. But there certainly were communications concerning that. Are those in the record? They're in the transcript, I believe. You mean their testimony of... Efforts to rent it.  Yes, Your Honor. No documentary support? Concerning that issue, there's no documentary support. I don't recall exactly how many years ago that was. No one from outside the family who testified to having been urged to rent it? There was no such testimony, Your Honor. That's correct. That would have made a big difference. I wasn't the attorney during the trial. Well, and if facts don't exist, they don't exist. No, I understand that. Regarding briefly substantiation, I think the notice, it was a very specific notice. It focused only on whether the house expenses could be deducted. It did not say that the expenses were not adequately substantiated. I think there's pretty clear case law that the IRS, they can write a specific notice or they can write a general notice and put the taxpayer on notice of all the matters that need to be approved. The tax court's determination of your client's intent here would be a fact question that we would review for clear error, right? I believe that's correct, Your Honor. And one thing that wasn't addressed at all by the tax court is whether it was reasonable to treat the entire farm together and not separate it out into individual parts because there's no question that the farm itself was producing income. And I think the case law indicates that in such a situation, you should generally accept the taxpayer's position with respect to their separate businesses or single business. Here we have a rental business. You're trying to rent all aspects of the farm. You also have connections with the farm in that there was storage in the house in connection with... On that point, how do you respond to the Commissioner's argument that that regulation is inapplicable because they didn't derive any income from the house? I don't believe that that's correct, Your Honor. What is the standard? If one year they derive some income from the house, does that mean they can only connect the two during that year? You know, I think the question is that, you know, they were certainly making an active effort, an honest effort to make rental income from the house, Your Honor. It seems to me it would have been a much different case if the neighbors who rented the farmland, if the rental agreements had thrown in the house for another $5 a year. Well, I think you... Of course, then you'd have to have complex access and who gets to spend what to fix it up because they wouldn't have any interest in fixing it up. So that is, isn't that a de facto segregation of the elements of the former farm? They would not. If they're not living there, they wouldn't have an interest in fixing it up and there wouldn't be anyone at the farm to just look after the farm in case there was a problem anywhere at the farm. Were there any outbuildings with this house? Or was it just simply a house? There were some outbuildings and there were... A barn and things like that? It's my recollection that there was a barn but it wasn't maintained. But there were other storage facilities in which both tools and stuff were used both on the farm and presumably on the farmhouse were stored, Your Honor. I think I used to stall my horse if I decided to move up there. Right? Because the barn is not usable, is that what you're saying? That's my recollection. It is in the transcript. If I could reserve the remainder of my time. Mr. Pett. May it please the Court, I'm Curtis Pett, representing the Commissioner. Your Honors, the Tax Court's finding in this case that the taxpayers failed to satisfy their burden of proving that they were in the real estate rental business with respect to the farmhouse is not clearly erroneous because the taxpayers failed to submit any evidence demonstrating that they had an actual and honest intent to make a profit from the farmhouse. The only evidence that they offered in this regard was Mr. Meinhardt's testimony that when they purchased the farm in 1976, the farm as a whole looked like a good investment. Mr. Meinhardt obviously was referring to the land rental prospects for the property. During the ensuing 30 years, they regularly rented the land to local farmers and they did not rent the farmhouse to a paying tenant during that period. And even assuming that there was evidence in the record that the taxpayers initially had a genuine profit motive with respect to the farmhouse, the fact that they had no success in finding a paying tenant in the following 30 years surely must have dissuaded them from that notion and made it obvious that the profit prospects for renting the farmhouse were negligible at that point before the years that issued 2005 through 2007. And during that period they made only modest efforts to rent the property. There's no documented evidence of the extent or the nature of the marketing efforts that they made. We only have Mr. Meinhardt's testimony that they put ads in the local weekly newspaper and posted a note on the corner grocery store. Can't profit motive also be capital appreciation? Yes, it can. But in this case the facts clearly support the conclusion that the house was being held as a personal asset. The facts show that over the years that the people staying at the house did slowly but surely remodel the house and refurbish the house. It needed substantial renovation when it was new and then by the time that it was livable the Meinhardts moved into it. And the fact that most of the time in the meantime it was relatives living in the house all point strongly to the conclusion that it was a personal asset and real estate that's used as a personal asset is not just by virtue of the fact that real estate prices increase is not converted into a business asset. That's the 212 issue isn't it? Yes. So in some based on this record the tax court's factual finding that the taxpayers failed to meet their burden of proving that they were engaged in a real estate rental business with respect to the farmhouse is not clearly erroneous. Would it change the case if they had included the house in the rental agreements with the tenant farmers reserving a right of access improvement and occupancy? That fact would tend to bring into question whether it was a personal asset if someone else had legal rights to the property and the relatives weren't allowed to live there. No. With the Meinhardts reserving in other words they just throw the house in the rental agreement but all other facts stayed the same including searching for separate renters because the neighbor tenant farmers wouldn't have paid any extra for renting for including the house if it was free they would probably not object it. I don't think that fact would carry much. It would appear to be window dressing if someone's renting the property, throwing the farmhouse for a nominal rental and then continuing to use it for personal purposes I don't think would carry a lot of weight. Well except the personal purposes were improvement. It doesn't. Yeah there was some residing but it sounds like a lot of it was getting family members to be caretakers and handy people and so forth. If they threw the house in with the farm rental they would be giving up their personal purposes they would have transferred their personal interest in the house to the FNV as I understand the question, maybe I misunderstand it if they spent money to improve it that would be improving an asset that they were renting entirely I don't know whether that's deductible or not. Would that come under 212 deductibility if they improved the house on the theory that with a better house they could get more for the Well perhaps if they gave up the personal use of it in the meantime and in the end they end up hiding a real estate agent and selling the property then that would be a far different scenario than we have in this case They'd have to pay capital gains tax on the gain instead of get a deduction on the improvement That would be a different issue, yes. Most of it at the price of corn and soybeans when you're sort of isolated like this most of the time they take the house off because they can garner more income from the land that the house sits on at $12 a bushel for soybeans than you can rent it for Unless you have a mind to perhaps retiring on that type of site later on In urban areas at least this urban area there are folks who like to buy a house for the purpose of living in it while they fix it up and then they sell it and move on and do it again How does the commissioner treat that from the standpoint of 162 and 212 Well if you're living there then you would have capital gain but it wouldn't I mean if you're using it for personal purposes then But they can I mean they have credible evidence that this is their business that they just buy, live in and fix up one house after another If it was a business then the money you'd be spending would be capital expenses, you wouldn't be deducting them like they were here They buy houses since they turned down the real estate industry where they buy a house and live in it and then sell it and they don't intend to live in it any longer and then they can sell the newer house So how do you Well in that type of situation the expenses would be capital improvements Maybe these taxpayers would have that in mind too Would they have been able to deduct the improvements that they were making with that in mind Not as you go, if you're making If you buy a rundown structure and then invest in rebuilding it those are capital expenditures and they would be deducted against the sales price later on, that would be a totally different situation That concludes my comments unless the court has any further questions Thank you Mr. Ewer have any time for rebuttal I mean concerning the hypothetical that the judges raised it seems like a pretty formalistic distinction if in fact you know he had simply included the house in the property in the rental and nothing else had changed Everyone recognized that there was need for people to live in the house and the people that were available to live in the house were the people that in fact did end up living in the house and maintain the house and fixing up the house for a possible future sale You didn't make that argument in this case did you? I'm making it now Thank you your honor Before this moment No because you guys are smarter than me and you made it first Thank you Reject that notion That's obviously untrue Thank you counsel The case is interesting and it's been well briefed and we'll take it under advisement The court will be in recess for